**FILED**

FEB 22 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

|  |  |
|---|---|
| In re | Case No.  08-13589-B-7 |
| Shawn Deitz, | |
| Debtor. | |
| Wayne Ford and Patricia Ford, | Adversary Proc. No. 08-1217 |
| Plaintiffs, | |
| v. | |
| Shawn Deitz, | |
| Defendant. | |

## MEMORANDUM DECISION REGARDING MOTION TO TERMINATE EARNINGS WITHHOLDING ORDER

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Shannon Deitz appeared *in propria persona* as the moving party.

Russell Reynolds, Esq., of Coleman & Horowitt, L.P., appeared on behalf of the respondents Wayne & Patricia Ford.

Before the court is a motion filed by Shannon Deitz ("Shannon") to remove an earnings withholding order against her paycheck, which this court issued on January 23, 2012 (the "Motion"). This contested matter relates to the enforcement of a nondischargeable judgment against Shannon's husband, the debtor Shawn Deitz ("Shawn").[1] For the reasons set forth below, the Motion will be granted.

---

[1] Shannon married Shawn in December 2000, and they are still legally married, however, Shannon filed a petition for legal separation from Shawn in 2008 (Fresno County Superior Court no. 08CEFL00786 - the "Family Law Action"). They have two minor children.

1    This memorandum decision contains the court's findings of fact and conclusions

2 of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

3 contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).  The court

4 has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 105, and

5 General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of

6 California.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

7 **Background and Findings of Fact.**

8    In December 2010, Wayne & Patricia Ford (the "Fords") filed this adversary

9 proceeding against Shawn to liquidate a claim for damages and to determine the

10 dischargeability of that claim pursuant to 11 U.S.C.§ 523.  The damage claim arose out

11 of a construction project and a contract which the Fords entered into with Shawn and the

12 Dietz's construction company, Deitz Construction, Inc.  Shannon was an officer of the

13 construction company.[2]  On July 28, 2011, the Fords were awarded a judgement against

14 Shawn personally in the amount of $386,092.76 (the "Judgment") which was also

15 determined to be excepted from Shawn's discharge in this bankruptcy proceeding.[3]

16    On December 16, 2011, the Fords filed a motion for permission to garnish

17 Shannon's wages to enforce the Judgment.[4]  In that proceeding, the court determined that

18 Shawn had a community property interest in Shannon's wages, which made those wages

19 subject to garnishment for satisfaction of the Judgment under applicable California law.[5]

20

21    [2]The Fords allege that Shannon was at one time also a partner in the construction business

22 and guaranteed some of the company's debts.  However, these facts have never been adjudicated.

23    [3]The Judgment was affirmed on appeal by the Bankruptcy Appellate Panel of the Ninth

24 Circuit in a published opinion on April 23, 2012. (*In re Deitz*, 469 B.R. 11 (9th Cir. BAP 2012))
That ruling is currently on appeal to the Ninth Circuit.  Shawn did not move for a stay of

25 enforcement pending appeal.

26    [4]Shannon is employed as a teacher with the Sanger Unified School District.

27    [5]Cal.Code of Civ. P. § 695.020(a) provides: "Community property is subject to

28 enforcement of a money judgment as provided in the Family Code."

On January 23, 2012, this court entered an Order Authorizing an Earnings Withholding Order Against the Earnings of the Spouse of the Judgment Debtor against Shannon's wages. The January Order did not specify the amount of money that could be withheld from Shannon's paycheck and Shannon's wages were initially garnished in the amount of $1,018 per month. In response, Shannon filed a claim of exemption to protect her wages; the Fords objected. In a subsequent proceeding arising from Shannon's exemption claim, this court determined that Shannon's wages could be garnished in the amount of $622 per month. That ruling was memorialized in an Order on Hearing on Claim of Exemption dated June 18, 2012 (the January 23, 2012, and June 18, 2012 orders are collectively referred to herein as the "Earnings Withholding Orders"). At some point, the U.S. Marshal began enforcing the Earnings Withholding Orders. Some money has been garnished from Shannon's wages, however, it is not clear how much money has actually been collected and how much has been turned over to the Fords.

On or about August 23, 2012, Shannon and Shawn executed a Marital Settlement Agreement which was filed in their Family Law Action (the "MSA"). The MSA recites that Shannon and Shawn separated in January 2008, based on "irreconcilable differences." The MSA provides, *inter alia*, that all property acquired by Shannon after separation would be her separate property. Shawn expressly waived any interest in Shannon's wages. Subsequently, on November 1, 2012, the Fresno County Superior Court entered a decree of legal separation in the pending Family Law Action (the "Separation Decree"). Presumptively, the Separation Decree was entered consensually. The Separation Decree also approved the MSA.

Shannon brings this Motion, *pro se*, requesting an order to terminate the Earnings Withholding Orders based on her contention that the garnished wages are now her separate property and no longer subject to enforcement of the Judgment. Shannon also requests an order directing the release of any moneys being held by the U.S. Marshal based on garnished wages earned after the Separation Decree became effective.

3

1    The Fords oppose the Motion on a variety of grounds contending, *inter alia*, that

2    Shannon and Shawn are not actually, physically separated and that the Separation Decree

3    is a sham intended to avoid enforcement of the Judgment against Shannon. The Fords

4    made an offer of proof with some evidence to show that Shannon and Shawn still reside

5    in the same house with their two children. The Fords essentially ask this court to ignore

6    or refuse to recognize the Separation Decree. The Fords also argue that Shannon is

7    personally vicariously liable for the Judgement based on her relationship with Shawn and

8    the construction company. However, there has never been a determination that Shannon

9    is personally liable to the Fords; they sought and obtained the Earnings Withholding

10    Orders based solely on a showing that Shannon's wages were, at that time, community

11    property of her marriage to Shawn.

12    Following the initial hearing on the Motion, this court entered an order

13    suspending any further enforcement of the Earnings Withholding Orders by the U.S.

14    Marshal pending a final ruling on the issue. The Fords requested additional time to brief

15    the legal separation and vicarious liability issues and the matter was set for a final

16    hearing on January 17, 2013. However, the Fords filed a supplemental response in

17    which they declined to address the issues raised at the initial hearing, opting, instead, to

18    "challenge the [Separation Decree] in state court."[6] Based thereon, the final hearing was

19    dropped from calendar and the matter was taken under submission.

20    **Issue.**

21    To resolve this dispute, the court must make three inquiries. First, whether

22    Shannon's wages are still community property subject to garnishment to enforce the

23    Judgement; second, if the characterization of Shannon's wages has changed, what is the

24

25

---

26    [6]The Fords also requested clarification that, should the Earnings Withholding Orders be

27    terminated, the only funds that should be returned to Shannon are those earned after November 1, 2012, the date of entry of the Separation Decree. This request is consistent with Shannon's

28    prayer in the Motion.

4

1   effective date of that change; and third, whether Shannon's wages may still by garnished

2   based on the theory that she is personally liable for the Judgement.

3   **Applicable Law.**

4       The California Family Code contains the law applicable to a determination of the

5   issues, including: the rules governing the characterization of community and separate

6   property, Cal.Fam.C. § 750 et seq., § 850 et seq., and § 1500; the rules which determine

7   the characterization of property acquired after separation, Cal.Fam.C. §§ 771-772; the

8   rules governing the liability of community property for a spouse's debts, Cal.Fam.C.

9   §§ 910–916; and the rules governing the liability of community property for tortuous

10   injury caused by a spouse, Cal.Fam.C. § 1000. In summary, these statutes provide that:

11       1) with some exceptions, all property acquired by married persons during the

12   marriage while domiciled in California is presumed to be community property.

13   Cal.Fam.C. § 760;

14       2) property acquired by a married person after separation is that person's separate

15   property. Cal.Fam.C. § 771-772;

16       3) during the marriage, married persons may consensually change, or transmute,

17   the character of their community and separate property by agreement. Cal.Fam.C.

18   §§ 850, 1500;

19       4) a "debt," for which community property is potentially liable, means an

20   obligation incurred by a married person before or during marriage, whether based on

21   contract, tort, or otherwise. Cal.Fam.C. § 902;

22       5) the debts of either party incurred before or during the marriage may be satisfied

23   from the community estate. Cal.Fam.C. § 910;

24       6) except or otherwise provided by statute, the separate property of each spouse is

25   only subject to satisfaction of the debts of that spouse. Cal.Fam.C. § 913; and

26       7) a person is not liable for damage or injury caused by their spouse unless they

27   would be independently liable if not married. Cal.Fam.C. § 1000(a).

28

1    In other words, for debtor/creditor purposes, while the married couple resides in

2    California, there can be three kinds of property, "his separate property," "her separate

3    property," and "property of the community." Each spouse's separate property is liable

4    for debts that the spouse incurs, before or during the marriage. Presumptively, whatever

5    a married couple in California acquires during marriage is characterized as "community

6    property" and is available for satisfaction of the debts of either spouse. However, in

7    California, marriage alone does not, in the absence of a statute to the contrary, make one

8    spouse personally liable for the debts incurred by the other.

9        While the *community* continues until and unless the marriage ends, a married

10   couple has the right under Cal.Fam.C. § 1500 to agree to alter their respective property

11   rights. This would include the right to agree that *future property* acquired by the spouses

12   during the marriage will not become *community property,* instead retaining its character

13   as separate property of the acquiring or earning spouse.[7]

14   **Analysis and Conclusions of Law.**

15   Shannon's Wages Ceased to Be Community Property Upon Entry of the

16   Separation Decree. The first and second questions turn on the current status of

17   Shannon's wages. The nature of an interest in property is determined according to state

18   law. *In re Penrod,* 611 F.3d 1158, 1161 (9th Cir. 2010). Community property is broadly

19   defined as all real or personal property, except as otherwise provided by statute,

20   wherever situated, that is acquired by a married person during the marriage while

21   domiciled in California. Cal.Civ.C. § 687; Cal.Fam.C. § 760. Community property

22   includes the earnings of either spouse during marriage. *State Bd. of Equalization v. Woo,*

23   82 Cal. App. 4th 481, 98 Cal. Rptr. 2d 206 (1st Dist. 2000), as modified on denial of

24   reh'g, (Aug. 7, 2000).

25   

26       [7]A married couple also has the right under Cal.Fam.C. §§ 850 and 1500, to transmute
27   existing community property to separate property and vice versa. Such changes in the character
     of property that is already in existence is subject to applicable fraudulent transfer laws.
28   Cal.Fam.C. § 851. However, no such transfers are at issue here.

6

1       The community property presumption is an "opt-out" presumption. This

2      opportunity for married persons to opt out of the community property presumption is

3      implicitly recognized in Cal.Fam. § 1500, which states: "The property rights of

4      husband and wife prescribed by statute may be altered by a premarital agreement or other

5      marital property agreement."

6       Here, Shannon and Shawn are married, but they have contractually agreed,

7      through the MSA, to terminate the community estate, thereby changing, or transmuting,

8      all of Shannon's *future* wages to separate property. Such a contract is statutorily

9      permitted under Cal.Fam.C. §§ 850 and 1500. Since, for purposes of this Motion, the

10     MSA only applies to Shannon's future wages, there is no issue with regard to fraudulent

11     transfers of existing community property.

12      In addition to the MSA, Shannon and Shawn have obtained from the state court a

13     judgment of legal separation. The Fords contend that the Separation Decree is a sham

14     and argue, with some supporting evidence, that Shannon and Shawn are not actually,

15     physically living apart, notwithstanding the representation in the MSA that they

16     separated in 2008. Their argument is based on Cal.Fam.C. § 771(a), which states in

17     pertinent part: "The earnings and accumulations of a spouse . . . *while living separate*

18     *and apart* from the other spouse, are the separate property of the spouse." (Emphasis

19     added.) Section 771 is applicable to determining the property rights of a married couple

20     in the absence of a judicial decree of separation. When there is a dispute between

21     estranged spouses as to the nature of their property, the court may make a factual inquiry

22     to determine if and when the spouses actually separated. However, § 771 has no

23     application here because this Motion is based on Cal.Fam.C. § 772, which provides:

24     "After *entry of a judgment of legal separation* of the parties, the earnings or

25     accumulations of each party are the separate property of the party acquiring the earnings

26     or accumulations." (Emphasis added.) Nothing in the California Family Code requires

27     more than a pleading, that irreconcilable differences have caused the irremediable

28     breakdown of the marriage, to obtain a Separation Decree in the State of California.

Cal.Fam.C. § 2310(a).  Unlike a petition for dissolution, a petition for legal separation does not even require six months residency.  There is no requirement that the spouses make a showing of *actual* separation before they can obtain a judgment of *legal* separation.  Indeed, the right to get such a decree, by consent of the spouses, is wholly consistent with statutory authority and such a decree terminates the community estate discussed above.

In support of their position, the Fords cite the case of *In re Marriage of Norviel*, 102 Cal. App. 4th 1152 (2002).  In *Norviel*, the spouses were engaged in a contested divorce and there was a dispute as to the character of their property rights.  The sole issue in that case was whether the trial court properly determined the date of separation. *Id.* at 1158.  Because the "separation" issue had not yet been adjudicated, the court had to look to the evidence to determine if and when the parties did separate.  The *Norviel* case has no application here because Shannon and Shawn are not litigating the fact and timing of their separation; they have agreed to a consensual decree, that the state court entered on November 1, 2012, and which thereupon fixes the date of their legal separation.  Even if Shannon and Shawn still reside in the same residence for reasons that are irrelevant here, entry of the Separation Decree operates, pursuant to Cal.Fam.C. § 772, to statutorily change the nature of Shannon's wages from community property to her separate property.  Thus, Shannon's wages are no longer available to satisfy the Judgment against Shawn.  The Separation Decree was filed and became effective on November 1, 2012.  As a matter of law, any of Shannon's wages that were earned on or after that date were and are her separate property.  Even if, as the Fords contend, the Separation Decree was entered in error, this court is not a court of appeal on that issue (assuming the Fords would have standing to appeal the issue).  The Separation Decree is entitled to receive "full faith and credit" in the bankruptcy court.  U.S. Const.Art.IV, sect. 1.

/ / /

/ / /

8

1    <u>Shannon Is Not Personally Liable for Payment of the Judgment.</u>  The Fords

2    contend that Shannon is personally responsible for payment of the Judgment and that

3    they can continue to satisfy the Judgment from Shannon's wages because she was

4    married to Shawn at the time of the injury.  They argue that the Judgment is a

5    "community debt" because the underlying claim was "incurred during the marriage."

6    However, the Fords misconstrue Cal.Fam.C. § 910 which states in pertinent part,

7    "Except as otherwise expressly provided by statute, the *community estate is liable* for a

8    debt incurred by either spouse before or during marriage . . . ."  (Emphasis added.)  The

9    fact that the "community estate" is statutorily liable for the satisfaction of one spouse's

10   debts does not mean that the other spouse is forever personally liable for that debt as

11   well.

12          The California presumption, that all property acquired by married persons is

13   "community property," does not have a "community debt" matching concept.  The order

14   in which debts, such as this one, may be satisfied from community property or personal

15   property is a function of whether the debt was incurred for the benefit of the community.

16   Cal.Fam.C. § 1000(b).[8]  However, with limited exceptions not relevant here,[9] *personal*

17   *liability* for debts incurred by a married person inures only to the party to the debt.

18   Except as provided by statute, "The separate property of a married person is not liable

19   for a debt incurred by the person's spouse before or during marriage."  Cal.Fam.C.

20   § 913(b)(1).  Likewise, a debt resulting from the tortuous injury to the person or property

21   of another by a married person does not create liability on the part of the debtor's spouse

22   unless the spouse would be independently liable in the absence of the marriage.

23

24

25   _____

26          [8]The Fords argue that their construction contract with Shawn was "for the benefit of the
     community" and should not be considered as Shawn's separate debt, but that fact has never been
27   adjudicated.

28          [9]See Cal.Fam.C. § 914 regarding liability for necessities of life.

9

Cal.Fam.C. § 1000(a).[10]  Here, the Fords have not shown that Shannon would be personally liable for the claim underlying the Judgment and they cite no authority for that proposition.

The Fords argue that Shannon should pay the Judgment because she was an officer of the construction company and (allegedly) personally guaranteed some of its debts.  However, the Ford's complaint against Shawn was based on his fraudulent and wrongful conduct in the course of negotiating and performing a construction contract.  The complaint stated no claim for relief against Shannon, either as a co-tortfeasor or as a guarantor of the company's debt.  Neither Shannon nor Dietz Construction were named as parties to the litigation and no judgment was entered against anyone except Shawn.  As a fundamental matter of due process, this court cannot now decree Shannon to be personally liable for the Judgment in the context of a dispute over enforcement of the Judgment.

**Conclusion.**

For the reasons set forth above, the Motion will be granted.  This court's Order Authorizing an Earnings Withholding Order Against the Earnings of the Spouse of the Judgment Debtor dated January 23, 2012, and the Order on Hearing on Claim of Exemption dated June 18, 2012, shall be terminated effective November 1, 2012.  Any funds held by the U.S. Marshal that represent Shannon's earnings prior to November 1, 2012, shall be released to the Fords.  Any funds that represent Shannon's earnings on or after November 1, 2012, shall be returned to Shannon.

Dated: February ___22___ , 2013

W. Richard Lee
United States Bankruptcy Judge

---

[10]Cal.Fam.C. § 1000(a) states:  "A married person is not liable for any injury or damage caused by the other spouse except in cases where the married person would be liable therefore if the marriage did not exist."

10

Shawn Deitz, Case No. 08-13589-B-7/Adv. Proc. No. 08-1217

Shawn Deitz
6589 E. Michigan Ave.
Fresno, CA 93727

Shannon Deitz
6589 E. Michigan Ave.
Fresno, CA 93727

Thomas H. Armstrong, Esq.
Attorney at Law
5250 N. Palm Ave., #224
Fresno, CA 93704

Russell W. Reynolds, Esq.
Attorney at Law
499 W. Shaw Ave., Ste. 116
Fresno, CA 93704

Robert A. Hawkins
Chapter 7 Trustee
1849 N. Helm, #110
Fresno, CA 93727

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721